*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **JOHN DOE,** | : | **CIVIL ACTION:** |
| **Plaintiff,** | : | **3:01-CV-00519 (PCD)** |
| | | |
| **v.** | : | |
| | | |
| **RONALD BARRETT, ET AL.** | : | |
| **Defendants.** | : | **JULY 31, 2006** |

### SUPPLEMENTAL MEMORANDUM BRIEFING THE ISSUE OF PLAINTIFF'S EXHAUSTION OF ADMINISTRATIVE REMEDIES

Pursuant to The Court's Order for Supplemental Briefing dated July 13, 2006, Plaintiff John Doe (**"Doe"**) hereby submits this memorandum in support of his exhaustion of administrative remedies.

**I.     FACTS**

Beginning in December 1998, Doe was incarcerated in the Hartford Community Correctional Center.  Complaint ("Compl.") dated, April 2, 2001, ¶ 10.  In February of 1999, Doe requested an HIV test, and received an appointment with the institution's HIV Counselor, Ronald Barrett (**"Barrett"**).  *Id.* at ¶ 11.  Although Barrett worked in the prison, he was employed by the University of Connecticut Health Center.  *Id.* at ¶ 2.  After informing Doe of his negative HIV status, Barrett continued to order guards to bring Doe to his office to discuss

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

Barrett's personal life. *Id.* at ¶¶ 12-14. Beginning in April of 1999, Barrett touched Doe inappropriately, and made sexual advances toward him, by touching him inappropriately on and around his shoulders, chest and back, which Doe resisted. *Id.* at ¶ 17. Barrett responded to Doe's rejection by physically assaulting him, and by threatening to retaliate by: notifying corrections officers that Doe struck him; instituting charges against Doe in order for him to serve additional jail time; falsely telling corrections officers that Doe was in a gang; falsely spreading a rumor around the institution that Doe was a homosexual; and contacting Doe's family to inform them that he struck a staff member. *Id.* at ¶¶ 17-18. In addition to violently shoving Doe against a wall, choking him around his throat, and punching him (*id.,* ¶ 17). Barrett also punched Doe in the chest in the initial attack after he tried to escape (*id.,* ¶ 20), which aggravated Doe's asthma (*id.,* ¶ 21). Barrett continued to sexually and physically assault Doe by forcing him into a chair, pulling down his pants, and touching his genitals, and further threatened him not to tell anyone about the incident. *Id.* at ¶¶ 19-22.

On numerous occasions thereafter, Barrett continued to sexually assault Doe. Compl., ¶¶ 24-26, and 33-36. The threats against Doe also continued. *Id.* at ¶¶ 23, 27, 32, 38. After another sexual assault in Barrett's office in June 1999 (*id.,* ¶¶ 24-26), Barrett allowed Doe to leave after threatening him not to tell anyone about the assault (*id.,* ¶ 27). Also, Barrett

repeatedly threatened Doe by reciting the address of Doe's mother and threatening to tell his family that he was gay and had performed sexual acts on Barrett. *Id.*, at ¶ 38.

In an attempt to avoid Barrett, Doe intentionally struck another inmate in the presence of a corrections officer, in the hopes of being moved to another unit in the facility. *Id.* at ¶¶ 28-30. He also changed his GED class schedule (*id.,* ¶ 31). Barrett nonetheless tracked down Doe, and told Doe that he could always find Doe's schedule and that Doe could not hide from him. *Id.,* at ¶ 32. Thereafter, Barrett took Doe into a medical storage room, pulled down Doe's pants, and forcibly attempted to sodomize Doe. *Id.* at ¶ 33-34. From July through September 1999, Barrett inappropriately touched, fondled, and sexually assaulted Doe on more than fifteen separate occasions. *Id.* at ¶ 35.

On or about July 9, 1999, Doe filed an Inmate Request Form, intended for Lieutenant Berrios, whereby he requested to speak with a prison official in order to inform them of Barrett's conduct toward him. Compl., at ¶ 45. Doe never received a response to his written request. *Id.* at ¶ 46. The degradation Doe suffered at the hands of Barrett constituted cruel and unusual punishment, intentional assaults, unlawful restraint, and deprivation of his liberty without due process of law, in violation of his Eighth and Fourteenth Amendment rights under the United States Constitution, as well as a violation of Section 1983 of Title 42 of the United States Code. *Id.* at 42.

*Rome McGuigan, P.C.* • *Attorneys at Law*

One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

Defendants were responsible for supervising Barrett, Compl., Third Count, ¶¶ 44-49. In or around April 1999 two inmates at the Hartford Community Correctional Center filed complaints against Barrett for sexual misconduct. *Id.,* at ¶ 50. Barrett offered one inmate cigarettes in exchange for seeing him naked. *Id.,* at ¶ 52. Similar allegations were also made in April of 1999 by another inmate. *Id.,* at ¶ 53. In the scope of their supervision of Barrett, Defendants learned that Barrett engaged in inappropriate sexual behavior with inmates. *Id.,* at ¶ 54-55. However, in April 1999, Defendants simply placed a written reprimand in Barrett's personnel file for "inappropriate behavior" (*id.,* at ¶ 54), and allowed him to continue seeing inmates behind locked doors and closed blinds. Compl., ¶¶ 16, 25, and 36.

## II.    RELEVANT PROCEDURAL HISTORY

As a result of the aforementioned facts, Doe filed his Complaint dated April 2, 2001 against Barrett, [1] Lt. Berrios, John Armstrong, Mary Johnson, Kenneth Avery, Belinda Billue, Esther McIntosh, Mary Marto, and the University of Connecticut Health Center, alleging violation of his civil rights under the Eighth and Fourteenth Amendments to the U.S. Constitution, and 42 U.S.C. § 1983. Doe's Complaint also alleges assault, intentional infliction of emotional distress, false imprisonment, negligent hiring, negligent supervision, and negligent retention.

---

[1] Barrett is no longer a party to this action.

4

*Rome McGuigan, P.C.* • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

All Defendants with the exception Barrett filed a Motion to Dismiss dated May 29, 2001, and a Supplement to said Motion dated June 1, 2001, claiming, *inter alia,* Doe's failure to exhaust prison administrative remedies.  Doe addressed that argument in his Memorandum of Law in Opposition to Defendants' Motion to Dismiss dated July 12, 2001.  In the Court's August 2, 2001 grant of Defendants' Motion to Dismiss, it held that "[a]s there is an administrative process in Connecticut available to plaintiff, he must avail himself of such prior to filing a federal action."  Plaintiff then filed a Notice of Intent to Appeal.

On or about October 11, 2005, the Second Circuit Court of Appeals vacated the District Court's judgment on the Defendants' Motion to Dismiss, and remanded the case to this Court for further proceedings.  Defendants then filed their answer and affirmative defenses dated January 20, 2006.  By Order for Supplemental Briefing dated July 13, 2006, the District Court, ordered the parties to submit a memorandum addressing the issue remanded for this Court's consideration.  The Second Circuit specifically took no position on whether additional factual development was required on remand, and the District Court was silent on that issue in its July 13, 2006 Order.

## III.    LEGAL STANDARD

The underlying motion for which Plaintiff filed his appeal to the Second Circuit was Defendants' Motion to Dismiss.  This Court did not request additional factual information in its

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

Order for Supplemental Briefing.[2]  Thus, it is understood that the applicable legal standard for the instant Memorandum is that of a motion to dismiss.  The standards governing motions to dismiss are well-settled:

> When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must construe any well pleaded factual allegations in the plaintiffs' favor.  *See Albright v. Oliver*, 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Boyd v. Nationwide Mut. Ins. Co.*, 208 F.3d 406, 409 (2d Cir. 2000).  In addition, the court must draw all reasonable inferences in the plaintiffs' favor.  *See County of Suffolk, New York v. First American Real Estate Solutions,* 261 F.3d 179 (2d Cir. 2001).  Dismissal is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 Led2d 80 (1957); *see also Kittay v. Kornstein*, 203 F.3d 531, 537 (2d Cir. 2000).  The issue on a motion to dismiss "is not whether the plaintiff will prevail, but whether he is entitled to offer evidence to support his claims."  *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D.Conn. 1990) (citing *Schuer*, 416 U.S. at 236, 94 S.Ct. 1683).
>
> In deciding such a motion, a district court must "limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint."  *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999).

---

[2] In *Ziemba v. Wezner,* 366 F.3d 161 (2d. Cir. 2004), the circuit court vacated the district court's order dismissing plaintiff's suit, and remanded the case.  The district court was directed to consider plaintiff's claim that estoppel bars the assertion of the exhaustion defense, and further noted that since said consideration would require the court to look beyond the pleadings and the documents attached thereto, the district court must allow factual development and address the estoppel claim at the summary judgment stage.  *Id.*, at 163-64.  Since Doe received no instruction from the court to convert the motion to dismiss into one for summary judgment, Plaintiff will treat this Supplemental Memorandum as one solely addressing the allegations in Plaintiff's Complaint.

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

*Fenton v. United Technologies Corp.*, 204 F.Supp.2d 367, 368-69 (D.Conn. 2002).

## IV.    ARGUMENT

### A.    Defendants Waived Their Right to a Ruling on the Motion to Dismiss, thereby Rendering the Court's Consideration of the Defendants' Prior Motion to Dismiss Moot.

On October 11, 2005, the Second Circuit Court of appeals vacated the District Court's judgment on the Defendants' Motion to Dismiss, and remanded the case to this Court for further proceedings on the issue of whether Doe exhausted his administrative remedies. The effect of the vacation and remand is to allow the District Court to reconsider its ruling on the Motion to Dismiss in light of recent precedent not available to the Court in its initial ruling. *See* Summary Order ("Summary Order") dated October 11, 2005[3] at 3.

After the order of the Second Circuit, but prior to this Court's opportunity to consider whether Doe's claims had been exhausted in light of recent opinions directly impacting this case (Summary Order at 3), Defendants filed their answer and affirmative defenses dated January 20, 2006, wherein they asserted their Seventh Affirmative defense alleging Plaintiff's failure "to exhaust his administrative remedies required by the Prison Litigation Reform Act." Defendants' filing of an answer waives the right to a ruling on the pending Motion to Dismiss. *See Marczeski v. Law,* 122 F.Supp.2d 315, 320 (D.Conn. 2000) (denial of defendants' Rule

---

[3] Entered as Document 62.

Rome McGuigan, P.C. • Attorneys at Law

One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

12(b)(6) motion as untimely since defendants answered plaintiffs complaint and, in fact, previously filed a motion to dismiss); *Hale Propeller, LLC v. Ryan Marine Products, Pty, Ltd.,* 98 F.Supp.2d. 260 (D.Conn. 2000) (defendants' motion to dismiss on grounds of personal jurisdiction denied as defendants waived rights by filing answer); *see also Waldo v. R.H.M. Properties, LLC,* 2002 WL 725499 (Conn.Super., Mar. 28, 2002)[4] (filing an answer to counterclaim waived plaintiff's right to have court determine the legal sufficiency of the counterclaim), *quoting, Mangusi v. Vigiliotti,* 104 Conn. 291, 294 (1926) ("The filing of the reply operated as a withdrawal of the [motion to strike] previously interposed by the same party."); *Yuille v. Bridgeport Hospital,* 2002 WL 318151 (Conn.Super., Feb. 8, 2002) (plaintiff waived right to reargue by filing an amended complaint).

The Court's re-visitation of the issue of exhaustion of remedies as ordered by the Second Circuit in order to rule on Defendants' Motion to Dismiss is now moot due to the Answer and Special Defenses filed by the Defendants. Therefore, judgment should not issue on Defendants' prior Motion to Dismiss.

## B.    Prison Litigation Reform Act

In order for prisoners to properly pursue a § 1983 claim in federal court, prisoners must comply with certain requirements. One such requirement is detailed in 42 U.S.C.A. § 1997e,

---

[4] Unpublished cases are attached as Exhibit 1.

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • (860) 724-3921 • Fax (860) 724-3921 • Juris No. 27726

the Prison Litigation Reform Act ("**PLRA"**), which provides in relevant part that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title … by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a). The PLRA applies to "all inmate suits about prison life, whether they involve general circumstance or particular episodes." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). "Exhaustion of administrative remedies pursuant to the PLRA is required for prisoner suits seeking redress for prison circumstances or occurrences . . ." including "an Eighth Amendment violation based on the use of excessive force or some other wrong." *Id.* "The PLRA does not require the exhaustion of all administrative remedies, but only those that are 'available' to the inmate. *Abney v. McGinnis,* 380 F.3d 663, 667 (2d Cir. 2004), *quoting,* 42 U.S.C. § 1997e(a).

The goal of the PLRA was to "reduce the quantity of prisoner suits, while improving the quality of such suits." *Porter v. Nussle,* 534 U.S. at 524-25. Furthermore, it was designed to afford correction officials "time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.; Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004); *Abney, supra,* 380 F.3d at 667.

Although the PLRA establishes a mandatory exhaustion requirement, it does not create a jurisdictional predicate to a court's ability to consider the complaint. *Jenkins v. Haubert,* 179

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

F.3d 19, 28-29 (2d Cir. 1999); *Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir. 2004);

*Richardson,* 347 F.3d at 434. "It is now well-settled in this circuit that exhaustion under the

PLRA is not jurisdictional, and that it is an affirmative defense." Summary Order at 2, *quoting*

*Ziemba,* 366 F.3d at 161.

By characterizing non-exhaustion as an affirmative defense, the Second Circuit

suggests that the issue of exhaustion is "generally not amenable to the resolution of a motion

to dismiss." *Harris v. Armstrong*, No. 3:02CV665(RNC), 2005 WL 756523, *2 (D.Conn. Mar.

31, 2005) (*citing Reyes v. Punzal*, 206 F.Supp. 2d 431, 433 (W.D.N.Y. 2002)). Instead, the

defendant must present proof of non-exhaustion.[5] *Griffin v. Cleaver*, Slip Copy, 2005 WL

1200532, *4, No. 3:03CV102 (DJS) (TPS), (D. Conn. May 18, 2005) (*citing Hallet v. New York

State Dep't of Corr. Serv*. 109 F. Supp. 2d 190, 196-97 (S.D.N.Y. 2000)) (court noted that the

Second Circuit views "the failure to comply with the PLRA's exhaustion requirement as an

affirmative defense … and … defendant bears the burden of probing plaintiff's failure to comply

with the exhaustion requirement."); *McCoy v. Goord*, 255 F.Supp.3d 233, 248 (S.D.N.Y. 2003)

(court noted that the Second Circuit holds non-exhaustion as an affirmative defense, and that

---

[5] While Plaintiff submits this Memorandum of Law in Support of his exhaustion of administrative remedies prior to receipt of Defendants' Memorandum discussing non-exhaustion, Plaintiff requests the opportunity to file a reply memorandum to address any facts and/or arguments made by Defendants in an attempt to meet their burden of proof.

therefore, defendants bear the burden of proof and "prison plaintiffs need not plead exhaustion with particularity.").

### C.    John Doe Exhausted His Administrative Remedies

Since the District Court's initial ruling dismissing this case based on the issue of exhaustion of prison administrative remedies, the Second Circuit ruled on five consolidated companion cases, which clarify the manner in which courts determine whether administrative remedies were exhausted.  *See Ortiz v. McBride,* 380 F.3d 649 (2d. Cir. 2004); *Abney v. McGinnis,* 380 F.3d 663 (2d. Cir. 2004); *Giano v. Goord,* 380 F.3d 670 (2d. Cir. 2004); *Hemphill v. State of New York,* 380 F.3d 680 (2d. Cir. 2004); and *Johnson v. Testman,* 380 F.3d 691 (2d. Cir. 2004).

The *Hemphill* court developed a three-part inquiry in cases where a prisoner seeks to counter the affirmative defense that he failed to exhaust all available administrative remedies as required by PLRA.  First, whether administrative remedies were available to the prisoner. Second, whether defendants forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether their own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising it as an affirmative defense.  Third, in the event administrative remedies were available, and defendants did not forfeit their claims, or are not estopped from raising the affirmative defense, whether special circumstances have

Rome McGuigan, P.C.  •  Attorneys at Law

One State Street  •  Hartford, Connecticut  06103-3101  •  (860) 549-1000  •  Fax (860) 724-3921  •  Juris No. 27726

been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements. 380 F.3d at 686 (internal quotation marks and citations omitted).

In the Summary Order, the Second Circuit noted that of particular relevance to Doe's case was the finding that threats by prison guards may render administrative remedies unavailable for purposes of the PLRA. Summary Order at 3, *quoting Ortiz,* 380 F.3d at 654 (*citing Hemphill*, 380 F.3d at 689-91). In light of recent precedent and the three-part inquiry discussed further below, the factual allegations of Doe's Complaint contain numerous, well-pleaded factual allegations of threats by Barrett which support the unavailability of administrative remedies to Doe, or in the alternative, justify Doe's failure to completely exhaust his administrative remedies.

### 1.    Availability of Administrative Remedies

The first requirement of a non-exhaustion defense is that administrative remedies need to have been found "available." "[T]he court must ask whether the administrative remedies were in fact 'available' to the prisoner." *Hemphil,* 380 F.3d at 686. If no available administrative remedies are found, the PLRA is inapplicable. *Abney,* 380 F.3d at 668. In determining whether ordinary grievance procedures are "available" to a prisoner, the test is to be an "objective one: that is, would similarly situated individual of ordinary firmness have deemed them available." *Hemphill*, 380 F.3d at 688.

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • (860) 724-3921 • Fax (860) 724-3921 • Juris No. 27726

"[T]hreats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance, but not from appealing directly to individuals of greater authority within the prison system, or to external structures of authority such as state or federal courts." *Hemphill*, 380 F.3d at 688. One rationale for this is "seeking a criminal investigation or filing a civil rights complaint may enable an inmate to draw outside attention to his complaints, thereby neutralizing threatened retaliatory conduct from prison employees."

In *Hemphill*, plaintiff was physically assaulted by corrections officers and was thereafter denied his requests to go to the prison's medical clinic. 380 F.3d at 683. When he finally obtained a pass to the clinic from another officer, one of the officers who assaulted him met him and placed him in the room where he was initially assaulted. *Id.* After some discussion, plaintiff was again assaulted by two officers. During the attack, a Sergeant entered the room, but did not intervene when plaintiff requested his help in calling off the officers. *Id.*, at 684. After the assault, the officers threatened plaintiff by telling him if he filed a grievance, he would be placed in a special housing unit, and the officers would bring criminal charges against him for assaulting an officer. *Id.* Plaintiff agreed to their threats to avoid further torture from the officers. *Id.* Five months after the assault, plaintiff wrote the superintendent a letter informing him that he intended to bring criminal charges against the officers who were named as defendants in the civil action pending in district court. *Id.* In its analysis of whether

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

administrative remedies were available to plaintiff, the court noted that if plaintiff wrote the superintendent in a timely fashion pursuant to grievance procedures, there might be a question as to the availability of remedies since plaintiff received no response to his letter, and there is no indication that his grievance was ever recorded, as required by DOCS procedures. *Id.*, at 687, n.6. The Second Circuit was not able to determine whether the remedies plaintiff failed to pursue were actually available to him or that they were not available. The court therefore remanded the question of whether "some seemingly available remedies were rendered unavailable by the threats Hemphill received." *Id.*, at 688.

In the case at bar, the sexual and physical assaults Doe received from Barrett, and the physical and verbal threats Doe received from him concerning the future reporting of the incidents to anyone, rendered administrative remedies unavailable to Doe. Plaintiff was violently shoved against a wall, choked around his throat and punched by Barrett. Compl., ¶ 17. He was also punched in the chest, which caused him difficulty breathing. Compl. ¶¶ 20-21. Barrett tracked Doe's whereabouts (Compl. at ¶ 24), and told Doe he could not hide from him (Compl., at ¶ 31-32). On more than fifteen occasions, Barrett sexually assaulted Doe against his will including an attempted sodomy in a medical supply room. Compl. at ¶¶ 17, 19, 20, 22, 25, 26, 34, and 35. After these incidents, Barrett told Doe not to tell anyone, and threatened to retaliate by notifying corrections officers that Doe struck him; instituting charges

against Doe in order for him to serve additional jail time; falsely telling corrections officers that Doe was in a gang; falsely spreading a rumor around the institution that Doe was a homosexual; and contacting Doe's family to inform them that he struck a staff member. Compl. at ¶ 18; *see also* ¶¶ 22, 23, 27, and 38.  As early as April 1999, Defendants' knew of Doe's sexual propensities toward inmates (Compl., at ¶¶ 50-53), and did nothing more than place a written reprimand in his file for "inappropriate behavior" (*id.*, at ¶ 54).

In addition, Defendants' inaction to meet with Doe or respond to his written request for assistance constitutes an unavailable administrative remedy.  Doe filed a written request to speak with Lieutenant Berrios about the assaults he suffered from Barrett.  Compl., ¶ 45.  Doe did not receive a response from Berrios or any other prison officer concerning his written request. *Id.*, at 46.  The Defendants' failure to timely respond to Doe's grievance renders the administrative remedy unavailable. *See Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (2002); *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002); *Foulk v. Charrier,* 262 F.3d 687, 698 (8th Cir. 2001); and *Underwood v. Wilson*, 151 F.3d 292 (5th Cir. 1998); *see also Ziemba v. Wezner,* Slip Copy, 2006 WL 860091, at *3, No. 3:98CV2370 (DFM) (D.Conn. Mar. 31, 2006) (court found that the plaintiff's inability to appeal a grievance, because the grievance was never returned with a disposition, created a genuine issue of material fact as to whether the plaintiff exhausted his administrative remedies); *Brownell v. Krom,* 446 F.3d 305 (2d Cir. 2006)

*Rome McGuigan, P.C.  •  Attorneys at Law*
One State Street  •  Hartford, Connecticut  06103-3101  •  (860) 549-1000  •  Fax (860) 724-3921  •  Juris No. 27726

Rome McGuigan, P.C. • Attorneys at Law

One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

(court found that the dismissal of a second grievance which alleged that prison officers intentionally lost his property created a situation where the prisoner was left without any administrative remedy).

### 2.     Estoppel precludes Defendants' from raising the defense of non-exhaustion.

The second question the court must ask in consideration of a non-exhaustion affirmative defense is "whether the defendant may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it or whether the defendants' own actions inhibiting inmate's exhaustion of remedies estop defendants from raising failure to exhaust as a defense." *Hemphill*, 380 F.3d at 686. While exhaustion of available administrative remedies is an affirmative defense, this PLRA requirement may be waived. *Johnson, supra,* 380 F.3d at 695.

The court in *Ziemba* held that the "deliberate obstruction of access to the grievance system, if proven, can be grounds for estoppel against the enforcement of the PLRA. *Ziemba v. Wezner,* 366 F.3d 161, 163. As a matter of first impression, the *Ziemba* court concluded that conduct by staff or prison officials that inhibit an inmate's ability to utilize grievance procedures also gives rise to estoppel from raising a defense of non-exhaustion. *Abney,* 380 F.3d at 667; *Ziemba,* 366 F.3D at 163. The court in *Hemphill* looked at this requirement and found that a guard's threats may prevent a prisoner from filing a grievance and thus prevent or

Rome McGuigan, P.C. • Attorneys at Law

One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

deter a prisoner from exhausting his remedies. *Hemphill,* 380 F.3d at 688.  Because of the guard's actions, there may be evidence to support the notion that the guards be estopped from raising non-exhaustion as an affirmative defense. *Id.; See also Ziemba* 366 F.3d at 164.

In *Ziemba,* plaintiff alleged that prison officials inhibited him from exhausting his administrative remedies by beating him, threatening him, denying him grievance forms and writing implements, and transferring him to another correctional facility. *Hemphill,* 380 F.3d at 688 (case remanded for court to consider whether defendants non-exhaustion defense is barred by equitable estoppel), *citing Ziemba,* 366 F.3d at 162.  The Second Circuit vacated the district court's ruling on summary judgment and remanded the case to address the issue of whether defendants' actions estopped them from asserting a defense of non-exhaustion. *Ziemba,* 366 F.3d at 163.  On remand, the district court held that genuine issues of material fact existed regarding whether the plaintiff exhausted his administrative remedies, and denied defendants' motion for summary judgment. *Ziemba v. Wezner,* Slip Copy, 2006 WL 860091.

Defendants' are estopped from raising an affirmative defense of failure to exhaust administrative remedies in this case.  As discussed in the Facts (§ I, *supra*), and Section IV.C.1., *supra,* Doe endured months of sexual and physical abuse at the hands of Barrett. Defendants' had knowledge of Barrett's behavior with regard to other inmates at the time

17

Barrett began his series of assaults on Doe.  Due to the extent and severity of the attacks, Doe was inhibited from exhausting his administrative remedies.

Defendants' are further estopped from raising the affirmative defense that Plaintiff failed to exhaust his administrative remedies because the filing of a grievance would have been futile in Doe's case.  Two inmates filed grievances against Barrett for sexual misconduct in April 1999.  Compl., ¶ 50-53.  However, Defendants took no steps to prevent such behavior from continuing.  The only action his supervisors took in response to these two complaints was to place a written reprimand in his file.  *Id.,* at ¶ 54.  The written reprimand was issued at the time Barrett made his initial sexual advances toward Doe.  *Id.,* at 16-22.  The action taken by Defendants did not curb Barrett's behavior as he began, and continued his sexual propensities toward Plaintiff.  "If it were the law that a custodial agency could see or hear no evil prior to the arrival on its supervisor's desk of a formal, written complaint from the victim then no amount of improper conduct by lower level custodial officials, standing alone, could ever support a constitutional claim."  Villante v. Dept. of Corr. of City of New York, 786 F.2d 516, 522 (1986).  "While prison supervisory officials are not required to be omniscient, they do have a duty to make reasonable inquiries into the activities of their subordinates and the condition of the inmates held in their custody."  Id.  In the instant case, given the lack of any meaningful discipline of Barrett by the Department of Corrections or University of Connecticut Health

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

Center as a result of the earlier complaints concerning Barrett's sexual aggression, Doe's pursuit of more formal grievance proceedings would have been futile, obviating the necessity of their exhaustion. *See Handberry v. Thompson*, 446 F.3d 335, 343 (2nd Cir. 2006) (discussing futility of exhaustion under federal Individuals with Disabilities Education Act). Therefore, Defendants should be estopped from raising non-exhaustion as an affirmative defense.

### 3. Special circumstances existed which rendered administrative remedies unavailable.

If administrative remedies to the prisoner are found to be "available" and the defendants are not estopped and have not forfeited the exhaustion defense, but the prisoner nevertheless did not exhaust remedies, the third question the court should ask is "whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Hemphill*, 380 F.3d at 689. *See also Giano*, 380 F.3d at 670 (*citing Berry v. Kerik*, 366 F.3d 85, 88 (2d 2003)); see also *Abney*, 380 F.3d at 667 (although the PLRA exhaustion requirement is mandatory, certain caveats, such as "special circumstances" in which the prisoners failure to comply with administrative procedural requirements may nevertheless have been justified.)

Justification in the PLRA context "must be determined by looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the

normally required way." *Giano,* 380 F.3d at 675-76. For example, reasonable reliance on regulations, statutes, or case law might excuse a prisoner's failure to pursue administrative remedies. *Id.* at 678-79 (court found that the plaintiff's interpretation of DOCS regulations, even in the absence of a subsequent Second Circuit case ratifying interpretation was a valid justification for failing to exhaust administrative remedies). The court in *Hemphill* found that a lack of clarity in the procedures which encompass the process of exhausting remedies may have justified an inmate's failure to follow "procedural rules to the letter" and thus provide grounds for "possible justifications for Hemphill's failure to follow the normal grievance procedures." *Hemphill,* 380 F.3d at 690.

In determining whether special circumstances justify a prisoner's failure to exhaust administrative remedies as required by the PLRA, the appropriate standard is "whether a similarly situated individual of ordinary firmness would have been deterred from following regular procedures." *Hemphill,* 380 F.3d at 690. The effect of such justification is that, although the administrative remedies are no longer available, such restrictions cannot serve to keep the plaintiff's suit from proceeding. *Giano,* 380 F.3d at 676. It is sufficient for the court to recognize that plaintiff's complaint "alleges facts, that, if true, suffice to justify his failure to file an ordinary grievance." *Id.* at 678.

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • (860) 724-3921 • Fax (860) 724-3921 • Juris No. 27726

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

Special circumstances such as physical threats made by prison officials might excuse a prisoner's choice to use an alternative approach to filing a grievance rather than comply with the standard administrative procedural requirements. *Hemphill,* 380 F.3d at 690. In *Hemphill,* the court remanded the case to the District Court so that the inmate could "have the opportunity to develop facts that would demonstrate that [defendant's actions] would deter a reasonable inmate from pursuing grievances." *Id.;*[6] *See also Giano,* 380 F.3d at 676. In so doing, the circuit court noted that the district court should consider "the interplay between [the officer's] threats and Hemphill's decision to write directly to the Superintendent rather than filing a level 1 grievance." The court reasoned that given the prior threats of retaliation made to plaintiff, he may have "reasonably concluded that writing directly to the Superintendent involved an acceptable level of risk, whereas filing a level 1 grievance or notifying the immediate supervisors of his purported attackers was too fraught with danger." *Hemphill,* 380 F.3d at 690.

The facts alleged in Doe's Complaint are sufficient to constitute "special circumstances" which justify his failure to file an ordinary grievance. As stated earlier, Barrett physically assaulted Doe on numerous occasions for resisting his advances, and threatened retaliation in numerous ways after his attacks on Doe. In addition, Doe's Inmate Request Form that he

---

[6] *See* § IV.C.1. for a brief summary of the facts in *Hemphill.*

intended to direct to Lt. Berrios, was an attempt to seek resolution of his grievance from a higher authority rather than risk Barrett's obtaining knowledge of the reporting through other grievance procedures. In addition, as stated earlier, Doe's conduct in this regard is more than reasonable given the lack of any meaningful action taken by Defendants in response to prior complaints of Barrett's sexual misconduct filed by other inmates.

## V.    CONCLUSION

Plaintiff contends that the Defendants' waived all rights to claims asserted in their Motion to Dismiss due to the filing of their subsequent answer and affirmative defenses. For all of the foregoing reasons, Plaintiff has exhausted available administrative remedies under the PLRA.

PLAINTIFF, JOHN DOE

BY _____
Zisca R. Burkley
Federal Bar No. ct22561
Rome McGuigan, P.C.
One State Street
Hartford, CT 06103
860-549-1000
860-724-3921 (fax)
zburkley@rms-law.com

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • (860) 724-3921 • Juris No. 27726

## CERTIFICATION

I hereby certify that on July 31, 2006, a copy of the forgoing was mailed via first class mail, postage prepaid to the following counsel:

Robert F. Vacchelli, Esq.
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105

Zisca R. Burkley

011615\000003\E09801.DOC