Westlaw.

Not Reported in A.2d                                                                                                Page 1
Not Reported in A.2d, 2002 WL 725499 (Conn.Super.), 31 Conn. L. Rptr. 657
**(Cite as: Not Reported in A.2d)**

**H**

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Connecticut.
Russell W. WALDO,
v.
R.H.M. PROPERTIES, LLC et al.
No. 557367.

March 28, 2002.

MEMORANDUM OF DECISION RE MOTION TO STRIKE (# 133)

D. MICHAEL HURLEY, Judge Trial Referee.
*1 The defendant RHM Properties LLC (RHM) filed an answer, special defenses and counterclaim on August 30, 2001. The plaintiff, Russell W. Waldo, filed a motion to strike RHM's special defenses and counterclaim on October 4, 2001. On February 19, 2002, the plaintiff filed a reply to the RHM's special defenses and an answer to RHM's counterclaim.

"The filing of the reply operated as a withdrawal of the [motion to strike] previously interposed by the same party ..." _Mangusi v. Vigiliotti,_ 104 Conn. 291, 294, 132 A. 464 (1926). Similarly, by filing an answer to the counterclaim, the plaintiff waived the right to have the court determine the legal sufficiency of the counterclaim. _Sachs v. Feinn,_ 121 Conn. 77, 80, 183 A. 384 (1936); _Kwiechien v. Gordon,_ 33 Conn.Sup. 637, 638 n. 2, 365 A.2d 118 (1976); see also Practice Book § § 10-6 and 10-7. For these reasons, no ruling is necessary on the plaintiff's motion to strike.

Conn.Super.,2002.
Waldo v. R.H.M. Properties, LLC
Not Reported in A.2d, 2002 WL 725499 (Conn.Super.), 31 Conn. L. Rptr. 657

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d
Not Reported in A.2d, 2002 WL 318151 (Conn.Super.), 31 Conn. L. Rptr. 339
**(Cite as: Not Reported in A.2d)**

Page 1

**H**
Briefs and Other Related Documents

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Connecticut.
Darcy YUILLE,
v.
BRIDGEPORT HOSPITAL.
**No. CV980358902S.**

Feb. 8, 2002.

MEMORANDUM OF DECISION ON MOTION TO REARGUE OR FOR RECONSIDERATION
(DOCKET ENTRY NO. 140)
MELVILLE, J.
*1 The Motion to Reargue is DENIED.

Plaintiff has waived his right to reargue by filing an amended complaint. See *P & L Properties v. Schnip Development,* 35 Conn.App. 46, 49 (1994), and cases cited therein; see also, *Henry v. Lisbell,* fn. 2, Superior Court, judicial district of Fairfield, Docket No. 0346842 (August 2, 2001).

Conn.Super.,2002.
Yuille v. Bridgeport Hosp.
Not Reported in A.2d, 2002 WL 318151 (Conn.Super.), 31 Conn. L. Rptr. 339

Briefs and Other Related Documents (Back to top)

• FBT-CV-98-0358902-S (Docket) (Dec. 10, 1998)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy
Slip Copy, 2005 WL 756523 (D.Conn.)
(Cite as: Slip Copy)

Page 1

H
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Connecticut.
Reginald HARRIS, Plaintiff,
v.
John ARMSTRONG, et al., Defendants.
No. 3:02CV665(RNC).

March 31, 2005.

Reginald Harris, Suffield, CT, pro se.
Lynn D. Wittenbrink, Attorney General's Office, Hartford, CT, for Defendants.

*RULING AND ORDER*

CHATIGNY, J.

*1 Plaintiff Reginald Harris, an inmate at MacDougall-Walker Correctional Institution, brings this action pursuant to 42 U.S.C. § 1983 against former Connecticut Department of Correction Commissioner John Armstrong, Doctor Mingzer Tung and Nurse Supervisor Joan Dobson claiming that when he was incarcerated at Garner Correctional Institution they were deliberately indifferent to his serious medical needs in violation of the Eighth and Fourteenth Amendments. Plaintiff has moved for leave to file a second amended complaint. Defendants have moved to dismiss the complaint and for a protective order. For the reasons that follow, plaintiff's motion is denied, the motion to dismiss is granted in part and denied in part, and the motion for protective order is granted.

*Summary of the Complaint*

The operative complaint in this case, the first amended complaint, was filed in February 2003. It alleges that when plaintiff was at Garner, he was transported to MacDougall-Walker three times a week for dialysis treatments, which were performed under the direction of a kidney specialist, who also prescribed medications for the plaintiff. According to the complaint, Dr. Tung prevented plaintiff from getting dialysis treatments on several occasions, failed to comply with orders issued by the kidney specialist to help plaintiff withstand his dialysis treatments and associated pain, wrongly discontinued several of his medications, refused to see him even when nursing staff requested that he be seen by a doctor immediately, and refused to provide him with a kidney transplant. With regard to Supervisor Dobson, the gist of the allegations is that, in her capacity as Garner's grievance coordinator, she improperly treated plaintiff's emergency grievances as if they entailed no emergency, thus causing him to suffer unwarranted delay in obtaining emergency treatment. Finally, with regard to former Commissioner Armstrong, the complaint alleges that plaintiff should have been transferred from Garner to MacDougall-Walker, where he could get dialysis treatments without having to be shuttled back and forth between the two facilities at state expense.

*The Motion for Leave to Amend*

Plaintiff seeks leave to file a second amended complaint to add numerous defendants and claims concerning medical care he received in the past at other correctional facilities besides Garner and medical care he is receiving at MacDougall-Walker. These new claims are not factually or legally related to his existing claims concerning the care he received at Garner.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a complaint "shall be freely given when justice so requires." Underlying this rule is an assumption that the amended complaint will clarify or amplify the original cause of action. The proposed amendments would not serve these purposes but instead would add numerous unrelated parties and claims. Accordingly, the motion for leave to amend is denied.

*Motion to Dismiss*

*2 Defendants move to dismiss any claims for money damages brought against them in their official capacities on the ground that such claims are barred by the Eleventh Amendment; any claims for declaratory and injunctive relief on the ground of mootness, plaintiff having been transferred from Garner; the claims against former Commissioner Armstrong on the ground that the complaint does not allege that he was personally involved in the claimed violations of plaintiff's constitutional rights; and any

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:01-cv-00519-PCD  Document 68-2  Filed 07/31/2006  Page 4 of 13

Slip Copy
Slip Copy, 2005 WL 756523 (D.Conn.)
(Cite as: Slip Copy)

Page 2

conspiracy claim on the ground that the complaint fails to adequately allege any facts to support the existence of a conspiracy to violate plaintiff's rights. I agree that any and all such claims must be dismissed for substantially the reasons stated by defendants.

Defendants also move to dismiss any claims with respect to which plaintiff has failed to exhaust his administrative remedies on the ground that such exhaustion is required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). In this Circuit, failure to exhaust administrative remedies as required by the PLRA is an affirmative defense. *Jenkins v. Haubert,* 179 F.3d 19, 28-29 (2d Cir.1999). As such, it generally is not amenable to resolution on a motion to dismiss. See *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002); *Hallett v. N.Y. State Dep't of Corr. Servs.,* 109 F.Supp.2d 190, 196-97 (S.D.N.Y.2000). This case is no exception. Accordingly, the motion to dismiss based on plaintiff's alleged failure to exhaust administrative remedies is denied without prejudice.

Finally, defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the claims against Dr. Tung and Supervisor Dobson for failure to state a claim on which relief can be granted. Dismissal on this basis is proper only if it is clear that plaintiff can obtain no relief under any set of facts consistent with his allegations. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Accepting plaintiff's allegations as true, and given him the benefit of all logical inferences, these defendants were deliberately indifferent to his need for dialysis treatments and other medical care in violation of his clearly established rights under the Eighth and Fourteenth Amendments. See *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Accordingly, the motion to dismiss these claims must be denied.

*Motion for Protective Order*

Defendants move for a protective order excusing them from responding to outstanding discovery requests until thirty days from the date of a ruling on their motion to dismiss. Defendants' motion is granted and they are directed to respond to all outstanding discovery requests within thirty days.

*Conclusion*

Accordingly, plaintiff's motion for leave to amend [Doc. # 34] is denied; defendants' motion to dismiss [Doc. # 29] is granted in part and denied in part; and defendants' motion for a protective order [Doc. # 31] is granted.

*3 So ordered.

D.Conn.,2005.
Harris v. Armstrong
Slip Copy, 2005 WL 756523 (D.Conn.)

Briefs and Other Related Documents (Back to top)

• 3:02CV00665 (Docket) (Apr. 12, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                                   Page 1
Not Reported in F.Supp.2d, 2005 WL 1200532 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Connecticut.
Cyrus GRIFFIN
v.
CLEAVER, et al.[FN1]

FN1. The named defendants in the amended complaint are Captain Michael Cleaver; Lieutenant Robert Meulemans; Correctional Treatment Officer Jason Martson, incorrectly named as Mastos; Correctional Counselor Marc Cooper; Correctional Officer Gregory Williams; Correctional Counselor Richard Werner; Correctional Counselor William Bourassa; Captain Steven Frey; Correctional Counselor Robert Clark; Correctional Officer Neil Cormier, incorrectly named as Cormein; and Deputy Commissioner Brian Murphy.

No. 3:03CV1029(DJS)(TPS).

May 18, 2005.

Cyrus Griffin, Somers, CT, pro se.
Kathleen Anne Keating, Attorney General's Office, Hartford, CT, for Defendants.

*RULING ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS*
SQUATRITO, J.
*1 Plaintiff Cyrus Griffin ("Griffin") is an inmate currently confined at Northern Correctional Institution in Somers, Connecticut. He brings this civil rights action *pro se* pursuant to 28 U.S.C. § 1915. Griffin alleges that defendants deprived him of his Fourteenth Amendment right to due process in connection with two disciplinary reports and the ensuing disciplinary hearings. Defendants have filed a motion for judgment on the pleadings. For the reasons that follow, the defendants' motion is granted.

I. *Standard of Review*

The Rule 12(c) standard for judgment on the pleadings is essentially the same as that applied to a motion to dismiss under Fed.R.Civ.P. 12(b)(6). See *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999). See also *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.), cert. denied, 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994). The court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to plaintiff. See *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 143 (2d Cir.2003). Dismissal is inappropriate unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999); *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir.2000). " '[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." ' *York v. Association of Bar of City of New York*, 286 F.3d 122, 125 (2d Cir.) (quoting *Scheuer*, 416 U.S. at 236), cert. denied, 537 U.S. 1089 (2002). In other words, " 'the office of a motion [for judgment on the pleadings] is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." ' *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 176 (2d Cir.2004) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980)). In its review of the motion for judgment on the pleadings, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir.1993). The Second Circuit "ordinarily require[s] the district courts to give substantial leeway to pro se litigants." *Gomes v. Avco Corp.*, 964 F.2d 1330, 1335 (2d Cir.1992).

II. *Facts*

The court accepts as true the following allegations taken from the amended complaint.

On May 2, 2002, Griffin was confined in the general population at the MacDougall-Walker Correctional Institution. He was playing cards with another inmate when a fight broke out on the tier above them. Griffin tried to get the attention of the correctional officer on

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1200532 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

duty to have his cell door opened so he could enter his cell. When he failed to get the guard's attention, he just stood outside his cell door.

*2 The inmate with whom Griffin had been playing cards began to fight with another inmate. Griffin tried to stop the fight. Griffin and another inmate were able to separate the two. When correctional officers, including defendant Williams, responded to the tier, all four inmates were handcuffed and taken to the restrictive housing unit along with a fifth inmate who had been standing in the general vicinity of the fight. After correctional staff reviewed a videotape of the incident, the fifth inmate was released and returned to his cell. Griffin received a disciplinary report for fighting. Defendant Cleaver said that he would review the videotape to determine whether Griffin was fighting or trying to stop the fight. He also said, however, that he did not believe Griffin's account of the incident, that he was pursuing all members of the security risk group Elm City Boys and that he was going to send all members of the Elm City Boys to Northern Correctional Institution.

Defendant Cooper was assigned to investigate Griffin's disciplinary charge for fighting. He spoke with Griffin on May 5, 2002, and told him that the fight on the top tier was not gang-related. On May 9, 2002, Griffin appeared at a disciplinary hearing before defendant Meulemans and was found guilty of fighting. The disciplinary finding was based on information provided by defendant Marston.

The following day, he received a second disciplinary report for Security Risk Group affiliation based upon the reports of confidential informants that Griffin was an active member of the Elm City Boys and that the fight on the lower tier was the result of disrespect shown toward members of the Elm City Boys. Defendants Clark and Cormier were assigned to investigate the charge. Defendant Clark interviewed Griffin. During the interview, Griffin asked defendant Clark to interview the other inmates to establish that the May 2, 2002 fight was not gang-related.

On May 15, 2002, Griffin received a duplicate of the May 10, 2002 disciplinary report with the charge changed from Security Risk Group affiliation to Security Risk Group Safety Threat. Defendant Frey signed the substitute disciplinary report. The hearing on this disciplinary report was held on May 16, 2002, again before defendant Meulemans. Defendants Clark and Cormier were present at the hearing but Griffin's advocate, defendant Bourassa, was not present. When Griffin tried to explain that he was not involved in the May 2, 2002 fight and attempted to call the other three inmates as witnesses, he was told that the purpose of the hearing was not related to the fight but rather to defend himself against the reports of the confidential informants. Defendant Werner, the substitute advocate, had not interviewed any of the witnesses and offered no assistance. Griffin was found guilty and transferred to Northern Correctional Institution. Griffin appealed both findings to defendant Murphy. Both appeals were denied.

### III. *Discussion*

*3 On February 27, 2004, defendants filed a motion to dismiss this action on four grounds: the Eleventh Amendment precludes any award of damages against defendants in their official capacities, defendants are protected by sovereign immunity from any state constitutional or common law claims, defendants are protected by qualified immunity and Griffin has no protected liberty interest in his classification. In response, Griffin argued that he was not challenging his classification and was not seeking damages from defendants in their official capacities. On August 18, 2004, the court granted defendants motion with regard to any claim for damages against defendant Murphy in his official capacity and any claim challenging classification and denied the motion in all other respects.

Defendants now have filed a motion for judgment on the pleadings. They assert seven arguments in support of their motion: (1) the Eleventh Amendment bars all claims for damages against defendants in their official capacities; (2) defendants are immune from suit for violation of the Connecticut Constitution or common law; (3) defendants are protected by qualified immunity; (4) Griffin failed to exhaust his administrative remedies before commencing this action; (5) Griffin has not alleged that he suffered any injury as require under 42 U.S.C. § 1997e(e); (6) Griffin has failed to demonstrate the personal involvement of defendant Murphy; and (7) Griffin fails to state a claim for denial of his Fourteenth Amendment right to due process.

### A. *Eleventh Amendment*

In the ruling on defendants' motion to dismiss, the court determined that Griffin named defendant Murphy in his individual and official capacities and all other defendants in their individual capacities. In

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2005 WL 1200532 (D.Conn.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

addition, the court granted defendants' motion to dismiss as to any claims for damages against defendant Murphy in his official capacity.

Defendants revisit this argument in their motion for judgment on the pleadings. Defendants now state that because Griffin states in his description of the parties in the amended complaint that each defendant was acting in his official capacity as a correctional employee, he may be naming them in their official capacities. The court disagrees.

First, Griffin has stated that he has not named any defendant except Murphy in his official capacity. Second, Griffin included these statements in response to the question on the complaint form regarding whether the defendant was acting under color of state law. The court construes these statements to indicate that Griffin was attempting to distinguish between the defendants acting in their capacities as correctional officers and as private citizens. As the court already has dismissed all claims for damages against defendant Murphy in his official capacity, the motion is denied as moot on this ground.[FN2]

> FN2. Defendants also argue that Griffin's claim for injunctive relief is barred by the Eleventh Amendment. The court need not address this argument as it concludes, below, that Griffin fails to state a claim for denial of due process.

### B. *State Law Claims*

Defendants contend that they are immune from suit for state law claims. Defendants raised this same argument in their motion to dismiss. In response, Griffin stated that he was not asserting any state law claims. The court denied defendants' motion to dismiss on this ground without prejudice to renewal should Griffin assert state law claims. The record contains no evidence suggesting that Griffin has asserted any state law claims in this case. Thus, there is no basis for revisiting this issue. Defendants' motion for judgment on the pleadings is denied on this ground.

### C. *Exhaustion of Administrative Remedies*

\*4 Defendants contend that judgment must be entered in their favor because Griffin has not attached to his amended complaint evidence demonstrating that he exhausted his administrative remedies prior to commencing this action.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), requires an inmate to exhaust "administrative remedies as are available" before bringing an "action ... with respect to prison conditions." The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, see *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), regardless of whether the inmate may obtain the specific relief he desires through the administrative process. See *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

The Second Circuit considers the failure to exhaust administrative remedies an affirmative defense. "A defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements [that plaintiff first exhaust all administrative remedies]." *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir.1999). By characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss or motion for judgment on the pleadings. Rather, defendants must present proof of non-exhaustion. See also *Reyes v. Punzal*, 206 F.Supp.2d 431, 433 (W.D.N.Y.2002) ("[I]n the Second Circuit, failure to comply with the PLRA's exhaustion requirement is viewed as an affirmative defense ... and ... defendant bears the burden of proving plaintiff's failure to comply with the exhaustion requirement") (citations omitted); *Hallett v. New York State Dep't of Correctional Serv.*, 109 F.Supp.2d 190, 196-97 (S.D.N.Y.2000) (same). *But see Snider v. Melindez*, 199 F.3d 108, 111-14 (2d Cir.1999) (holding that creating an exception to this rule by permitting the court to dismiss a complaint sua sponte, after notice to the plaintiff and an opportunity to be heard, where the plaintiff's failure to exhaust administrative remedies under the PLRA is "readily apparent," or "unambiguously established in the record").

Defendants urge the court to dismiss this action because Griffin failed to attach to his amended complaint evidence proving that he exhausted his administrative remedies. Because exhaustion of administrative remedies is an affirmative defense, however, the burden of demonstrating failure to exhaust rests with defendants, not Griffin. The burden usually is satisfied by affidavits from the grievance coordinator documenting the grievances

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1200532 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

filed by an inmate and the absence of any grievance on a particular issue. Such evidence, even if provided, cannot be considered on a motion for judgment on the pleadings. Defendants' motion for judgment on the pleadings is denied without prejudice on this ground.

### D. *Failure to State a Claim*

*5 Defendants next argue that Griffin fails to state a claim for violation of his right to due process.

To state a claim for violation of procedural due process, Griffin first must show that he had a protected liberty interest and, if he had such an interest, that he was deprived of that interest without being afforded due process of law. *See Tellier v. Fields,* 230 F.3d 502, 511 (2d Cir.2000) (citations omitted). In accordance with the Supreme Court's decision in *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Second Circuit applies a two-part test to determine whether an inmate possesses a protected liberty interest. *See id.* An inmate has a protected liberty interest "only if the deprivation ... is atypical and significant and the state has created the liberty interest by statute or regulation." *Id.* (citations and internal quotation marks omitted).

The court takes judicial notice of Griffin's disciplinary history. (*See* Defs.' Mem. Attachment D.) Griffin received disciplinary sanctions of 15 days confinement in punitive segregation, 90 days loss of telephone and 30 days confined to quarters at the first hearing and 15 days confinement in punitive segregation, 60 days loss of telephone, 60 days loss of social visits and 30 days loss of recreation at the second hearing. Inmates should reasonably anticipate confinement in segregation. *See Russell v. Scully,* 15 F.3d 219, 221 (2d Cir.1993); *see also Frazier v. Coughlin,* 81 F.3d 313, 317-18 (2d Cir.1996) (holding that 120 day confinement in segregation followed by 30 day loss of recreation, commissary privileges, packages and telephone use did not state a cognizable claim for denial of due process); *Rosario v. Selsky,* No. 94 Civ. 6872, 1995 WL 764178, at *3 (S.D.N.Y. Dec. 28, 1995) (holding that 120 days confinement in special housing unit with loss of privileges was not punishment "qualitatively different" from punishment normally suffered by one in prison).

The Second Circuit has not adopted a bright line test to determine when confinement constitutes an atypical and significant hardship, but "the decisions in the Second Circuit are unanimous that keeplock or [segregated housing unit] confinement of 30 days or less in New York prisons is not 'atypical or significant hardship' under *Sandin.*" *Williams v. Keane,* No. 95 CIV. 0379 AJP JGK, 1997 WL 527677, at *6 (S.D.N.Y. Aug.25, 1997) (citing cases). *See also Nicholson v. Murphy,* No. 3:02cv1815(MRK), 2003 WL 22909876, at *10-*11 (D.Conn. Sept. 17, 2003) (holding that confinement in segregation for thirty days or less is not an atypical and significant hardship); *Fine v. Gallow,* No. 3:97cv497(SRU), 2000 WL 565232, at *9 (D.Conn. Mar. 28, 2000) (granting defendants' motion for summary judgment on ground that two sanctions of five days confinement in punitive segregation and fifteen days confined to quarters, and seven days confinement in punitive segregation, fifteen days confined to quarters and thirty days loss of commissary privileges did not constitute an atypical and significant hardship); *McNellis v. Meachum,* Civ. No. 2:92cv936 (PCD) (D.Conn. Oct. 4, 1995) (holding that thirty-day period of disciplinary segregation does not give rise to liberty interest under *Sandin* ).

*6 In considering Griffin's claim, the court aggregates the two sanctions. *See Sealey v. Giltner,* 197 F.3d 578, 587 (2d Cir.1999) (requiring the court to aggregate sanctions that cause the inmate to serve consecutive time in segregation). Griffin has alleged no facts suggesting that the sanctions he received were qualitatively different from ordinary prison life. Thus, the court concludes that Griffin's thirty day confinement in segregation is not an atypical and significant hardship and does not give rise to a liberty interest under *Sandin.* In addition, Griffin has no constitutional right to telephone use, social visits and commissary privileges. *See Overton v. Bassetta,* 539 U.S. 126, 137, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003) (holding that regulation denying visitation for two years was not a "dramatic departure from accepted standards for conditions of confinement"); *Malchi v. Thaler,* 211 F.3d 953, 958 (5th Cir.2000) (holding that "30-day loss of commissary privileges and cell restriction do not implicate due process concerns"); *Frazier,* 81 F.3d at 317-18 (holding that 30 day loss of recreation, loss of commissary privileges and telephone use did not state a cognizable claim for denial of due process). Thus, these sanctions also do not support a claim for denial of due process.

In opposition to defendants' motion, Griffin states that, after serving the sanctions, he was transferred to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1200532 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 5

Northern Correctional Institution and states that the court must determine whether the conditions there constitute an atypical and significant hardship. Griffin's transfer to Northern was the result of his classification as a Security Risk Group Safety Threat Member. The court previously dismissed any claim challenging Griffin's classification. (*See* Ruling on Defendants' Motion to Dismiss, Doc. # 24, filed August 18, 2004.) Thus, Griffin's subsequent confinement at Northern Correctional Institution is not relevant to this claim. Defendants' motion for judgment on the pleadings is granted on this ground.

### IV. *Conclusion*

The defendants' motion for judgment on the pleadings [doc. # 29] is GRANTED. Griffin's motion [doc. # 31] for an order directing Inmates' Legal Assistance Program to assist him in contacting inmates confined at other correctional institutions is DENIED as moot. The Clerk is directed to enter judgment and close this case.

SO ORDERED.

D.Conn.,2005.
Griffin v. Cleaver
Not Reported in F.Supp.2d, 2005 WL 1200532 (D.Conn.)

Briefs and Other Related Documents (Back to top)

• 3:03cv01029 (Docket) (Jun. 09, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                 Page 1
Slip Copy, 2006 WL 860091 (D.Conn.)
**(Cite as: Slip Copy)**

**H**
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.
Duane ZIEMBA, Plaintiff,
v.
George WEZNER, et al., Defendants.
**No. 3:98CV2370(DFM).**

March 31, 2006.

Duane Ziemba, Newtown, CT, pro se.
James J. Nugent, Nugent & Bryant, Orange, CT, for Plaintiff.
Antoria D. Howard, Matthew B. Beizer, Perry A. Zinn Rowthorn, Attorney General's Office, Hartford, CT, U.S. Court of Appeals, Office of the Clerk, New York, NY, for Defendants.

*RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*
MARTINEZ, Magistrate J.
*1 The plaintiff, a Connecticut inmate, brings this action pursuant to 42 U.S.C. § 1983 against the former Commissioner of the Connecticut Department of Correction John Armstrong and various employees of the Cheshire Correctional Institution.[FN1] The plaintiff alleges that in violation of his constitutional rights the defendants failed to protect him from attack by his cell mate, denied him medical care and used excessive force. In addition to his federal claims, the plaintiff asserts state law claims of assault and battery. Pending before the court are the defendants' motion for summary judgment and motion for an evidentiary hearing. (Doc. # 105, 117.) The defendants argue that the plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). In the alternative, the defendants argue that the claims against the defendant Armstrong should be dismissed because the plaintiff has failed to demonstrate his personal involvement.

> FN1. Although at one point in this litigation the plaintiff was represented by counsel, he currently is appearing *pro se*. See doc. # 116.

*I. Procedural Background*

This case is before the court on remand from the United States Court of Appeals for the Second Circuit. In October 2002, the district court granted the defendants' motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) based on the plaintiff's failure to exhaust his administrative remedies and dismissed the case. The plaintiff appealed the decision. On appeal, the plaintiff argued, *inter alia,* that prison officials prevented him from exhausting his administrative remedies by beating him, threatening him, denying him grievance forms and writing implements and transferring him to another correctional facility. On April 23, 2004, the Court of Appeals vacated the decision of the district court and remanded the case. *Ziemba v. Wezner, et al.,* 366 F.3d 161 (2d Cir.2004). The Second Circuit held as a matter of first impression that the conduct of prison officials may estop them from asserting the defense of non-exhaustion. *Id.* at 163. The Court instructed that "[o]n remand, the district court is directed to consider Ziemba's claim that estoppel bars the State's assertion of the exhaustion defense. Because such consideration will require the court to look beyond the pleadings and the documents attached to the pleadings, the district court must allow factual development and address the estoppel claim at the summary judgment stage." *Id.* at 164.

The defendants subsequently filed the instant motions.

*II. Facts*[FN2]

> FN2. The facts are undisputed unless otherwise indicated.

In September 1997, the plaintiff was an inmate at the Cheshire Correctional Institution ("Cheshire") in Cheshire, Connecticut. On September 3, 1997, the plaintiff filed a Level 1 emergency grievance requesting that prison officials immediately move him away from his cell mate, Patrick Wright, because Wright had threatened him and kept weapons in his cell. (Doc. # 80, ex. A.) The plaintiff's grievance further stated that he made several requests of defendant Captain Muccino to be relocated to a different cell but defendant Muccino refused to move the plaintiff. Notwithstanding the plaintiff's grievance, the plaintiff's cell assignment was not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 860091 (D.Conn.)
(Cite as: Slip Copy)

Page 2

changed. On September 9, 1997, the plaintiff and Wright were involved in an altercation. (Defs' Local Rule 56(a)(1) Statement ¶ 5 [admitted].) The plaintiff alleges that Wright attacked and stabbed him. (Compl.¶ 17.) It is undisputed that the plaintiff was placed in segregation. (Answer ¶ 12.) The plaintiff alleges that he repeatedly requested, but was denied, medical care for injuries he received from his cell mate. (Compl.¶ 19.) He further alleges that on September 10, 1997, he was taken to state court for a scheduled court date but court officials would not permit him to appear because of his "shocking" condition. (Compl.¶ 20.) The plaintiff was returned to segregation. On September 12, 1997, the plaintiff was taken from segregation to the shower room. The plaintiff alleges that, while there, correctional officers threatened him and intimidated him with police dogs. (Com pl.¶ ¶ 22-23.) It is undisputed that a cell extraction team removed the plaintiff from the shower room and that correctional officers used pepper mace. (Answer ¶ 15.) The plaintiff was placed in four-point restraints. That evening, he was transferred to Northern Correctional Institution ("Northern") where he received medical attention. (Answer ¶ 18.)

*2 On September 18, 1997, the plaintiff's mother telephoned the FBI. She subsequently sent the FBI a letter in which she stated that correctional officers at Cheshire had beaten the plaintiff and denied him medical care and requested that the FBI conduct an investigation. (Doc. # 80, ex. D.)

### III. Legal Standard

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56. A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir.2003). "Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion." Bedor v. Friendly's Ice Cream Corp., 392 F.Supp.2d 367, 374 (D.Conn.2005). Where, as here, the plaintiff proceeds pro se, the court is obliged to construe his pleadings liberally and interpret them to raise the strongest arguments that they suggest. See Graham v. Henderson, 89 F.3d 75, 79 (2d Cir.1996). Although a pro se plaintiff is entitled to special latitude, he must establish more than merely "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### IV. Discussion

The defendants move for summary judgment on the ground that the plaintiff did not exhaust his administrative remedies.[FN3] They argue that they are not estopped from raising non-exhaustion as an affirmative defense.

FN3. This is the sole basis of their summary judgment motion.

"The PLRA provides that a prisoner may not proceed under Section 1983 'until such administrative remedies as are available are exhausted.' 42 U.S.C. § 1997e(a)." Braham v. Clancy, 425 F.3d 177, 181 (2d Cir.2005). The Connecticut Department of Correction ("DOC") has a multi-level inmate grievance procedure that is set forth in Administrative Directive 9.6. See Doc. # 82, ex. C. Under the inmate grievance procedure, an inmate may file an "Emergency Grievance" to which the DOC must respond within eight hours and follow up with a written response within three business days. Id. at ¶ 18(C). An inmate may file a non-emergency Level 1 grievance "within 30 days of the occurrence or discovery of the cause of the grievance." Id. at ¶ 10. The DOC is required to respond in writing to a Level 1 grievance within 30 days. Id. at ¶ 15. The inmate is notified of the disposition and is provided with directions for appealing to Level 2. Id. An inmate may appeal the decision within 5 calendar days of receiving the decision. Id. at ¶ 16. In addition, the inmate may appeal to Level 2 if he does not receive a "timely response" to his grievance. Id. at ¶ 16.

*3 Although the PLRA's exhaustion requirement is mandatory, "certain caveats apply." Giano v. Goord, 380 F.3d 670, 676 (2d Cir.2004). It is "now well-settled in this circuit that exhaustion under the PLRA is not jurisdictional ... and that it is an affirmative defense...." Ziemba v. Wezner, et al., 366 F.3d 163 (2d Cir.2004) (citations omitted). Subsequent to its decision in Ziemba, the Second Circuit decided Hemphill v. New York, 380 F.3d 680, 686 (2d

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
Slip Copy, 2006 WL 860091 (D.Conn.)  
**(Cite as: Slip Copy)**

Page 3

Cir.2004) in which it set forth a framework for analyzing contentions that an inmate failed to exhaust administrative remedies. First, "[d]epending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact 'available' to the prisoner." *Id.* Second, the court should "inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise it or preserve it," or "whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* Finally, "the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* (internal quotation marks omitted.)

The defendants argue that even if the plaintiff's allegations are true-*i.e.*, that he was "placed in a stripped segregation cell and denied access to all writing material and administrative grievances"-he "only asserts a viable argument that he was prevented from filing a grievance for three days, from September 9, 1997 to September 12, 1997." (Doc. # 106, Defs' Mem. in Supp. at 8.) Under the inmate grievance procedure, an inmate has 30 days from an incident in which to file a grievance. The defendants argue that the plaintiff had ample time-30 days from the September 9 and September 12, 1997 incidents of which he complains-in which to file a grievance and that there are no allegations that the plaintiff was constrained in any manner from filing grievances after September 12.

The plaintiff responds that the defendants are estopped from asserting a defense of non-exhaustion and that, in any event, he exhausted his administrative remedies. (Doc. # 113, Pl's Mtn in Opp'n.) In support of the latter claim, the plaintiff submitted an affidavit and attached copies of grievances dated September 15, 1997 and September 18, 1997 that he filed while at Northern concerning the incidents at Cheshire. (Doc. # 115.) Both grievances, the plaintiff avers, were not processed by prison officials and were returned to him. (Pl's Aff. ¶ 3.) He was unable to appeal because the inmate grievance procedure provides that a grievance returned without disposition may not be appealed. (Pl's Aff. ¶ 3; Administrative Directive 9.6 at ¶ 12.) In the September 15, 1997 grievance, the plaintiff states: "The lawyers at Inmate Legal Assistance Program told me that I must file this grievance. At Cheshire CI on 9-9-97 my cell partner stabbed me because Captain refused to move me away from him. Then they denied me medical care for stab wound and threatened and beat me in the shower room." (Pl's Aff., ex. B.) He further states that "they have me here to cover up." (*Id.*) As relief, the plaintiff requests that he be provided medical care, that an investigation be commenced and that he be "moved out of here." (*Id.*) According to the plaintiff, officials at Northern refused to process the grievance and returned it to him. (Pl's Aff. ¶ 2.) The document, which bears a receipt date of September 16, 1997, states that it was being returned because inmates are "not permitted to file grievances relating to another facility." The second grievance the plaintiff proffered in opposition to the defendants' motion is dated September 18, 1997. In this grievance, the plaintiff complains that his prior grievance dated September 15, 1997 regarding incidents at Cheshire was not processed.[FN4] A date stamp indicates that the grievance was received on September 22, 1997. A notation on the document states that it is being returned because the plaintiff is not permitted to file grievances that occurred at another facility. (Pl's Aff. ¶ 2, ex. C.) The plaintiff argues that, in light of the grievances he filed coupled with the lack of appealability, he exhausted administrative remedies.

> FN4. The grievance states: "My grievance on this same matter dated 9-15-97 was just returned and on it you state it won't be processed. You have to process it and this Legal Assistance told me. At Cheshire CI on 9-9-97 I was stabbed, then denied medical care, then beaten and assaulted, all in retaliation and unlawfully. I am seriously hurt. You must process this grievance and my grievance dated 9-15-97. Please investigate facts, call State police for me. Move me out of here. I did nothing wrong."

\*4 The defendants, in their reply brief, point out that the plaintiff previously did not present these grievances and challenge their authenticity.[FN5] (Doc. # 119, Defs' Reply Br. at 1.) They request that the court conduct an evidentiary hearing on the issue in which they claim they will "demonstrate that the documents presented by the plaintiff are forgeries." (Doc. # 119, Defs' Reply Br. at 1; doc. # 117, Defs' Request for Evidentiary Hrg at 3.) In support of their request, the defendants contend that "when a fact-bound jurisdictional question arises, courts possess considerable discretion in hearing evidence and weighing the proof." (Doc. # 117, Defs' Request for Evidentiary Hrg at 4.) The court does not dispute this

proposition. It is, however, not applicable in this case because exhaustion under the PLRA is not jurisdictional.[FN6]

> FN5. According to the plaintiff, when the Fed.R.Civ.P. 12(c) motion was filed in 2002, he was confined in Nevada. His attorney, who was located in Connecticut, did not have the entire case file and evidence. (Pl's Aff. ¶ 4.)

> FN6. Accordingly the cases cited by the defendants for this proposition are inapposite. *Valentin v. Hospital Bella Vista,* 254 F.3d 358, 363 (1st Cir.2001) ("[T]he court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction."); *Moran v. Kingdom of Saudi Arabia,* 27 F.3d 169, 172 (5th Cir.1994) (court may hold an evidentiary hearing to resolve a motion to dismiss based on subject matter jurisdiction). As support for their request, the defendants offer *Crawford v. Braun,* No. 99 CIV. 5851, 2002 WL 31426262 (S.D.N.Y. Oct. 28, 2002), a PLRA case. In that case, the district court found that genuine issues of material fact precluded granting summary judgment on the defendants' claim of non-exhaustion. The court stated that exhaustion was a "threshold question" and referred the issue to a magistrate judge for a hearing. *Crawford* stands alone in this circuit in its use of this procedural vehicle. This court is not persuaded that an evidentiary hearing is appropriate under these circumstances.

"When ruling on a motion for summary judgment, the court must respect the province of the jury." *Hellman v. Gugliotti,* 279 F.Supp.2d 150, 153 (D.Conn.2003). "The trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Services, Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir.1994). As indicated by the defendants' very request, a genuine issue of material fact exists regarding whether the plaintiff exhausted his administrative remedies. Where, as here, genuine issues of material fact exist, summary judgment must be denied. *See McCullough v. Burroughs,* No. 04CV3216, 2005 WL 3164248, at *3 (E.D.N.Y. Nov.29, 2005) (denying summary judgment where genuine issues of material facts exist as to whether grievance procedures were available and whether defendants are estopped from raising exhaustion as defense).

The defendants argue, in the alternative, that summary judgment should enter as to the defendant Armstrong because he lacks the requisite personal involvement to sustain the claims. (Doc. # 106, Defs' Mem. in Supp. at 13.) The plaintiff does not object to this aspect of the defendants' motion. (Doc. # 113, Pl's Mem. in Opp'n at 3.) Accordingly, the defendants' motion for summary judgment as to defendant Armstrong is granted.

V. *Conclusion*

For these reasons, the defendants' motion for summary judgment (doc. # 105) is denied in part and granted in part. The defendants' motion for summary judgment on the grounds of exhaustion is denied. The defendants' motion for summary judgment as to defendant Armstrong is granted. The defendants' motion for an evidentiary hearing (doc. # 117) is denied.

SO ORDERED.

D.Conn.,2006.
Ziemba v. Wezner
Slip Copy, 2006 WL 860091 (D.Conn.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.