# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

JOHN DOE,                                          :
      Plaintiff,                                :
                                :
v.                                                 :        Case No: 3:01cv519 (PCD)
                                :
RONALD BARRETT, ET AL.,                            :
      Defendants.                               :

## RULING ON MOTION TO DISMISS

Plaintiff John Doe ("Doe"), a prisoner in the Hartford Community Correctional Center,
filed his Complaint, dated April 2, 2001, against Ronald Barrett,[1] José Berrios, John Armstrong,
Ken Avery, Belinda Billue, Esther McIntosh, Mary Marto, Mary Johnson and the University of
Connecticut Health Center. Plaintiff's Complaint alleged, pursuant to 42 U.S.C. § 1983, assault
and battery, intentional infliction of emotional distress and false imprisonment. Defendants, with
the exception of Barrett, filed a Motion to Dismiss dated May 29, 2001, and a Supplement to that
Motion dated June 1, 2001, claiming, *inter alia*, that Plaintiff failed to exhaust prison
administrative remedies. On August 20, 2001, this Court granted Defendants' Motion to Dismiss,
holding that Plaintiff failed to exhaust his administrative remedies as required by the Prison
Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Subsequent to this Court's ruling, the
Second Circuit issued five consolidated opinions clarifying the nature of this affirmative defense.
See Ortiz v. McBride, 380 F.3d 649 (2d Cir. 2004); Abney v. McGinnis, 380 F.3d 663 (2d Cir.
2004); Giano v. Goord, 380 F.3d 670 (2d Cir. 2004); Hemphill v. State of New York, 380 F.3d

---

[1]      Ronald Barrett is no longer a party to this action. The case against Barrett was dismissed by this
Court on March 12, 2002 and Plaintiff was given thirty days to file an amended complaint.
Plaintiff, then acting *pro se*, failed to file an amended complaint and failed to appeal this Court's
ruling dismissing his case against Barrett.

680 (2d Cir. 2004); and <u>Johnson v. Testman</u>, 380 F.3d 691 (2d Cir. 2004). On October 11, 2005, the Second Circuit vacated this Court's judgment and remanded the case to this Court for further proceedings in light of these authorities. By Order for Supplemental Briefing dated July 13, 2006, this Court ordered the parties to submit memoranda addressing the issue remanded for further proceedings.

Pursuant to District of Connecticut Local Rule 77.1(e), the judgment of the Second Circuit Court of Appeals is hereby adopted and made the judgment of this Court. Per that Court's instruction, this Court's prior ruling granting Defendants' motion to dismiss [Doc. No. 34] is **vacated**. On reconsideration, and in light of the authorities noted in the Second Circuit's mandate, Defendants' Motion to Dismiss [Doc. No. 26] is **granted in part** and **denied in part**.

## I.    BACKGROUND[2]

Beginning in December 1998, Doe was incarcerated in the Hartford Community Correctional Center ("HCCC"). (Compl. ¶ 10.) In February 1999, Doe requested an HIV test and received an appointment with HCCC's HIV Counselor, Ronald Barrett ("Barrett"). (<u>Id</u>. ¶ 11.) Although Barrett worked at the prison, he was employed by Defendant University of Connecticut Health Center ("University"). (<u>Id</u>. ¶ 2.)

After informing Doe that his HIV test was negative, Barrett continued to order guards to bring Doe to his office. (<u>Id</u>. ¶¶ 12-14.) Barrett discussed his personal life with Doe, and in April 1999, Barrett began to touch Doe inappropriately and make sexual advances toward him, which Doe rejected. (<u>Id</u>. ¶¶ 14, 17.) Barrett responded by physically assaulting Doe, which involved

---

[2]    A court considering a motion to dismiss under Rule 12(b)(6) must accept the facts alleged in the complaint as true. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974). Accordingly, the statement of facts that follows is derived solely from Plaintiff's Complaint.

shoving Doe against a wall, choking him and punching him. (Id. ¶ 17.) In one instance, Barrett

punched Doe in the chest when he tried to escape, aggravating Doe's asthma. (Id. ¶¶ 20-21.)

Barrett also threatened to retaliate by telling corrections officers that Doe struck him, bringing

charges against Doe to increase his sentence, telling corrections officers that Doe was in a gang,

spreading a rumor that Doe was a homosexual and contacting Doe's family to tell them that he

struck a staff member. (Id. ¶¶ 17-18.) Barrett proceeded to sexually and physically assault Doe by

forcing him into a chair, pulling down his pants and touching his genitals. (Id. ¶ 19.) Barrett

threatened Doe and told him not to tell anyone about the incident. (Id. ¶ 22.)

    Barrett sexually assaulted Doe on several more occasions. (Id. ¶¶ 24-26, 33-36.) Barrett

also made several more threats toward Doe, in which he would recite the address of Doe's

mother and threaten to tell his family that he was a homosexual and had performed sexual acts on

Barrett. (Id. ¶¶ 23, 27, 38.) In June 1999, Barrett again sexually assaulted Doe, and permitted him

to leave only after ordering Doe not to tell anyone about the assault. (Id. ¶¶ 24-27.)

    At one point, Doe asked a corrections officer about moving to another part of the HCCC,

and in response Doe was told that a move would require a compelling reason. (Id. ¶ 28.) Doe

intentionally struck another inmate in the presence of corrections officers, hoping that he would

be transferred to another facility as a consequence. (Id. ¶ 29-30.) Doe also changed his GED class

schedule to avoid Barrett. (Id. ¶ 31.) Barrett found Doe and told him that he could always find

Doe's schedule and that Doe could not hide from him. (Id. ¶ 32.)

    In or around April 1999, two other inmates at HCCC filed complaints against Barrett for

sexual misconduct. (Id. ¶ 50.) In response, Defendants placed a written reprimand in Barrett's

personnel file for "inappropriate behavior." (Id. ¶ 54.) Defendants continued to permit Barrett to

see inmates privately. (Id. ¶¶ 16, 25, 36.) On or around July 9, 1999, Doe filed an Inmate Request

Form intended for Defendant Lieutenant Berrios in order to request to speak with a prison

official regarding Barrett's conduct. (Id. ¶ 45.) Doe never received a response. (Id. ¶ 46.) At all

times, Defendants were responsible for supervising Barrett. (Id. ¶¶ 44-49.)

## II.    STANDARD OF REVIEW

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all

factual allegations in the complaint and must draw inferences in a light most favorable to the

plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974). A

complaint should not be dismissed under Rule 12(b) "unless it appears beyond a doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); see also Jaghory v.

New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997); Hishon v. King & Spalding,

467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984).

"The function of a motion to dismiss is 'merely to assess the legal feasibility of the

complaint, not to assay the weight of the evidence which might be offered in support thereof.'"

Mytych v. May Dep't Stores Co., 34 F. Supp. 2d 130, 131 (D. Conn. 1999) (quoting Ryder

Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F. 2d 774, 779 (2d Cir. 1984)).

"The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the

plaintiff is entitled to offer evidence in support of his claims." United States v. Yale New Haven

Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 232).

## III.    DISCUSSION

### A.    Waiver of Defendants' Right to a Ruling on Motion to Dismiss

4

On October 11, 2005, the Second Circuit vacated this Court's judgment on Defendants' Motion to Dismiss and remanded the case to this Court for further proceedings. After the order of the Second Circuit, but prior to this Court's reconsideration of the Motion to Dismiss, Defendants filed their Answer and Affirmative Defenses dated January 20, 2006. Plaintiff argues that Defendants' filing of an answer waives their right to a ruling on the pending Motion to Dismiss. (Pl.'s Supp. Mem. 7.)

This Court rejects Plaintiff's argument for several reasons. First, Plaintiff relies on Marczeski v. Law, 122 F. Supp. 2d 315 (D. Conn. 2000), to assert that Defendants' Motion to Dismiss is untimely. (See Pl.'s Supp. Mem. 7-8.) In Marczeski, this Court held that the defendants' filing of a motion to dismiss was untimely because both an answer and a previous motion to dismiss had already been filed. 122 F. Supp. 2d at 320. Clearly, there is no timeliness issue in the instant case; Defendants filed the Motion to Dismiss that is the subject of this Ruling prior to filing their Answer. Moreover, even where courts faulted a motion to dismiss as untimely, such untimeliness did not dictate that issues raised in the motion were waived. See id. ("[Defendants'] Rule 12(b)(6) motion is untimely and will be denied. . . . However . . . defendants' challenge to the legal sufficiency of plaintiff's claims will be considered in connection with their motion for summary judgment.") This is consistent with the Federal Rules of Civil Procedure. Although Rule 12(b) provides that "[a] motion . . . shall be made before pleading if a further pleading is permitted," the Rule also provides that "[n]o defense or objection is waived by being joined with one or more other defenses . . . in a responsive pleading." FED. R. CIV. P. 12(b); see also FED. R. CIV. P. 12(h)(2) ("A defense of failure to state a claim upon which

relief can be granted . . . may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits."); Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001) (describing a motion to dismiss for failure to state a claim as a "non-waivable defense"). Therefore, although Defendants filed their Answer before this Court ruled, on remand, on their Motion to Dismiss, their Motion to Dismiss remains timely and their arguments are not waived. Instead, where a defendant files an answer before a motion to dismiss, federal courts are free to treat the motion to dismiss as a motion for judgment on the pleadings. See Wajilam Exps. (Sing.) Pte. Ltd v. ATL Shipping Ltd. No. 05 Civ. 7955 (GEL), 2006 WL 3019558, at *1 (S.D.N.Y. Oct. 23, 2006). Since the standard of review applicable to a motion for judgment on the pleadings is identical to that for a motion to dismiss, see, e.g., Greco v. Trauner, Cohen & Thomas, LLP, 412 F.3d 360, 363 (2d Cir. 2005), this Court finds no reason why Defendants' filing of an answer should preclude revisiting Defendants' Motion to Dismiss as mandated by the Second Circuit.

**B.    Defendants' Affirmative Defense of Exhaustion**

Plaintiff concedes that he did not exhaust administrative remedies, but argues that dismissal is not appropriate under the circumstances of this case. Generally, a plaintiff bringing a suit pursuant to 42 U.S.C. § 1983 need not exhaust administrative remedies. The PLRA, however, provides that "[n]o action shall be brought with respect to prison conditions under Section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As noted by the Supreme Court, Congress enacted the PLRA to "reduce the quantity and improve the quality of prisoner suits" by allowing prison officials to initially address prisoner complaints through internal processes. Porter v. Nussle, 534 U.S. 516,

6

524-25, 22 S. Ct. 983, 152 L. Ed. 2d 12 (2002). The PLRA's exhaustion requirement "applies to all inmate suits about prison life," including the constitutional violations alleged by Plaintiff here. Id. at 532.

In the Second Circuit, a district court must consider three factors before the court can decide whether the prisoner has failed to exhaust available administrative remedies. Those three factors are: (1) whether administrative remedies were "available" to the prisoner; (2) whether the defendants are estopped from asserting an exhaustion defense; and (3) whether special circumstances exist that excuse the prisoner from the exhaustion requirements. See Paese v. Hartford Life Accident Ins. Co., 449 F.3d 435, 445 (2d Cir. 2006); Hemphill v. New York, 380 F.3d 680, 686-92 (2d Cir. 2004).

### 1.    Whether Administrative Remedies Were "Available" to Plaintiff

Before dismissing a complaint for failure to exhaust under the PLRA, a court must "establish the availability of an administrative remedy from a legally sufficient source." Snider v. Melindez, 199 F.3d 108, 114 (2d Cir. 1999). "To be 'available under the PLRA, a remedy must afford 'the possibility of some relief for the action complained of.'" Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004) (quoting Booth v. Churner, 532 U.S. 731, 738, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001)). In making this determination, "courts should be careful to look at the applicable set of grievance procedures." Id. at 668 (quoting Mojias v. Johnson, 351 F.3d 606, 610 (2d Cir. 2003)). During the relevant time period in the instant case, the Connecticut Department of Corrections had in place a four-step Inmate Grievance Procedure. (See Ex. B at Defs.' Supp. Mem.)

Notwithstanding the existence of remedial procedures, sometimes a defendant's behavior,

including threats made against the plaintiff, will render an administrative remedy "effectively unavailable." See Hemphill, 380 F.3d at 687. For example, "[e]xhaustion may be achieved in situations where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking his administrative remedies." Abney, 380 F.3d at 667 (citation omitted); see also Hemphill, 380 F.3d at 688-89 (determining that threats from guards which prevent the filing of a grievance would make the remedy effectively unavailable) (citing Ziemba v. Wezner, 366 F.3d 161, 162 (2d Cir. 2004)).

From the allegations contained in Plaintiff's Complaint, there remains a question of fact whether administrative remedies were effectively unavailable. In Hemphill, the Second Circuit provided that the test to determine whether ordinary grievance procedures are available is an "objective one," namely whether a "similarly situated individual of ordinary firmness have deemed them available." 380 F.3d at 688. In applying this test, the Second Circuit noted that "threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance." Id. Plaintiff's Complaint clearly recounts "threats or other intimidation" sufficient to deter him from filing an internal grievance.

In response, Defendants argue that since Plaintiff initiated a grievance after he was assaulted and threatened by Barrett, he cannot then argue that an administrative remedy was unavailable. (Defs.' Mem. Supp. 4.) This Court cannot determine—as a matter of law—that the eventual initiation of a grievance precludes the possibility that threats or intimidation still rendered administrative remedies effectively unavailable at some time. First, as mentioned previously, the applicable standard is an "objective one;" it is quite possible that in a moment of extra-"ordinary firmness," Plaintiff decided to place himself at great risk of retaliation by filing a

grievance. This does not mean that under the "ordinary firmness standard" administrative procedures are thereafter available. See Hemphill, 380 F.3d at 688 (rejecting the argument that since plaintiff sent a letter and filed a suit, he was "not—as a matter of law—sufficiently frightened as to render normal grievance procedures unavailable"). Second, it is also possible that threats or intimidation, together with a grievance that goes unanswered, can render administrative remedies unavailable. See Ziemba v. Wezner, No. 3:98CV2370 (DFM), 2006 WL 860091, at *3 (D. Conn. Mar. 31, 2006) (holding that allegations that defendants failed to process and return plaintiff's grievance created a question of material fact as to whether administrative remedies were available).

"[D]efendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity." McCoy v. Goord, 255 F. Supp. 2d 233, 244 (S.D.N.Y. 2003). Moreover, "[b]y characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss." Nicholson v. Murphy, No. 302 Civ. 1815, 2003 WL 22909876, at *6 (D. Conn. Sept. 19, 2003). It follows, therefore, that "the failure to exhaust is not a ground for dismissal unless it is readily apparent from plaintiff's pleadings." Torrence v. Pesanti, 239 F. Supp. 2d 230, 233 (D. Conn. 2003). It is not readily apparent from Plaintiff's Complaint that administrative remedies were in fact available in the instant case, and therefore the Court finds that there is a genuine issue of material fact regarding whether administrative remedies were available.

    2.    Whether Defendants Are Estopped from Asserting an Exhaustion Defense

    Under the Second Circuit's three-part inquiry, a court must also inquire as to "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or

preserve it . . . or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." Hemphill, 380 F.3d at 686 (citations omitted). Under this analysis, for example, the Second Circuit has held that defendants may be estopped from raising a non-exhaustion affirmative defense where prison officials prevented an inmate from exhausting his administrative remedies by beating and threatening the inmate, denying him grievance forms, and tranferring him to another prison. Ziemba, 366 F.3d at 162-63.

Plaintiff's Complaint contains allegations of physical and sexual abuse as well as threats of retaliation if Plaintiff were to complain about such treatment. A trier of fact could reasonably conclude that such facts would estop Defendants from raising an affirmative defense of non-exhaustion. Moreover, for the same reasons discussed previously, the fact that Plaintiff initiated grievance procedures does not lead this Court to conclude as a matter of law that Defendants cannot be estopped from raising the defense of failure to exhaust.

3.     Whether Special Circumstances Exist that Excuse Plaintiff from the Exhaustion Requirement

Finally, a court must consider any special circumstances which may have frustrated an inmate's grievance. In Giano v. Goord, the Second Circuit determined that "there are certain 'special circumstances' in which, though administrative remedies may have been available and though the government may not have been estopped from asserting the affirmative defense of non-exhaustion, the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified." 380 F.3d 670, 676 (2d Cir. 2004) (citations omitted).

The test under the third prong of the Second Circuit's exhaustion analysis is the same as

the first, namely "whether 'a similarly situated individual of ordinary firmness' . . . would have been deterred from following regular procedures." Hemphill, 380 F.3d at 690. Again, the physical and sexual abuse and threats of retaliation alleged in Plaintiff's Complaint could lead a court to conclude that a person of ordinary firmness would be deterred from following grievance procedures. Moreover, the fact that Plaintiff filed an Inmate Request Form that went unanswered does not preclude a finding of "special circumstances," and may actually contribute to a finding of "special circumstances" that would excuse Plaintiff from the exhaustion requirement. Because issues of material fact remain, this Court rejects Defendants' Motion to Dismiss for failure to exhaust.

### C.    Defendants' Remaining Arguments

Since this Court rejects Defendants' Motion to Dismiss for failure to exhaust and reverses its prior ruling on that issue, it will proceed to evaluate the remaining arguments set forth in Defendants' Motion to Dismiss.

#### 1.    Sovereign Immunity

##### a.    *Claims against University of Connecticut Health Center*

Defendants argue that Plaintiff's claims against the University of Connecticut Health Center are barred by the Eleventh Amendment. The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The Supreme Court has consistently held that the Eleventh Amendment prohibits a private party from suing a state or one of its agencies or departments in federal court unless Congress unequivocally expresses its intent

11

to abrogate that immunity or a state waives its immunity. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99-100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) (citing Fla. Dep't of Health & Rehabilitative Servs. v. Fla. Nursing Home Ass'n, 450 U.S. 147, 101 S. Ct. 1032, 67 L. Ed. 2d 132 (1981) (per curiam); Alabama v. Pugh, 438 U.S. 781, 98 S. Ct. 3057, 57 L. Ed. 2d 1114 (1978) (per curiam)); Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974)); accord In re Charter Oak Assocs., 361 F.3d 760, 765 (2d Cir. 2004). This jurisdictional bar applies "whether the relief sought is legal or equitable." Papasan v. Allain, 478 U.S. 265, 276, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986).

The states' Eleventh Amendment immunity is not absolute; a state may waive its immunity by "an unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment." Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 n.1, 105 S. Ct. 3142, 87 L. Ed. 2d 171 (1985). Moreover, Congress may abrogate a state's sovereign immunity by (1) "unequivocally express[ing] its intent to abrogate the immunity" and (2) acting "pursuant to a valid exercise of power." Seminole Tribe v. Florida, 517 U.S. 44, 55, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996). In Atascadero, the Supreme Court held that "Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." 473 U.S. at 242.

This Court has consistently held that Connecticut state universities are entitled to claim immunity under the Eleventh Amendment, subject to waiver upon the State's consent. See, e.g., Oliver v. Univ. of Conn. Health Care, 292 F. Supp. 2d 398, 405-6 (D. Conn. 2003); Brown v. W. Conn. State Univ., 204 F. Supp. 2d 355, 361 (D. Conn. 2002). Plaintiff does not allege that the

12

State has waived its sovereign immunity. Plaintiff, however, urges this Court to withhold judgment on this issue until his claim filed with the State Claims Commissioner has been resolved, as the Commissioner may authorize suit against the State. (Pl.'s Mem. Opp. Mot. Dismiss 6.) Under Connecticut law, "[w]hen the Claims Commissioner deems it just and equitable, he my authorize suit against the state which, in his opinion, presents an issue of law or fact under which the state, were it a private person, could be liable." CONN. GEN. STAT. § 4-160(a). Connecticut law also provides that the Claims Commissioner can only authorize suit in state court, not federal court. Id. § 4-160(d); cf. Oliver 292 F. Supp. 2d at 406 (holding that § 46a-100 only grants authority for waiver in state courts).[3] This Court finds that Plaintiff's claims against Defendant University of Connecticut Health Center are barred by the Eleventh Amendment and are therefore dismissed.

> b.    *Claims against Defendants in their Individual Capacities*

Plaintiff also sues the Individual Defendants in their individual capacities, alleging various violations of federal law as well as the state law claim of negligent supervision.  State officials and employees who are sued in their individual capacities possess a limited immunity from suit pursuant to Conn. Gen. Stat. § 4-165, which provides:

No state officer or employee should be personally liable for damages or injury, not

---

[3]    The relevant language of § 4-160(d) and § 46a-100 is very similar. Compare CONN. GEN. STAT. § 4-160(d) ("Action shall be brought against the state as party defendant in the judicial district in which the claimant resides or, if the claimant is not a resident of this state, in the judicial district of Hartford or in the judicial district in which the claim arose."), with CONN. GEN. STAT. § 46a-100(d) ("Any person who has timely filed a complaint with the Commission on Human Rights and Opportunities . . . and who has obtained a release from the commission . . . may also bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the respondent transacts business, except any action involving a state agency or official may be brought in the superior court for the judicial district of Hartford."). The use of "shall" in § 4-160(d) makes the jurisdictional restriction even more apparent.

> wanton, reckless, or malicious, caused in the discharge of his duties within the scope
> of his employment. Any person having a complaint for such damage or injury shall
> present it as a claim against the state under the provisions of this chapter.

Id. Under this provision, state officials are liable only for "wanton, reckless, or malicious" acts, which does not include negligence claims. See Poe v. Pearl, No. No. 3:94CV2058 (AHN), 1997 WL 76576, at *8 (D. Conn. Jan. 29, 1997). Although the state officials are immune in federal court from Plaintiff's state law claim of negligent supervision, he is not without remedy. A plaintiff having a claim from which a state officer is immune pursuant to Conn. Gen. Stat. § 4-165 may present it to the State Claims Commissioner, as Plaintiff has already done, who may authorize suit against the state or state official in federal court. See § 4-165; McKinley v. Musshorn, 185 Conn. 616, 621 (1981). Plaintiff's state law claim of negligent supervision is dismissed.

### 2.    Personal Participation and Failure To State a Claim

Defendants argue that Plaintiff does not allege sufficient personal participation on behalf of Defendants in the alleged violations, and that Plaintiff therefore fails to state a claim upon which relief can be granted. Specifically, Defendants assert that "[t]he doctrine of *respondeat superior* is not applicable in section 1983 cases" and that "negligence does not rise to a level of constitutional harm authorizing an action under 42 U.S.C. § 1983." (Defs.' Mem. Supp. Mot. Dismiss 4, 6.)

"It is well settled . . . that the doctrine of respondeat superior standing alone does not suffice to impose liability for damages under section 1983 on a defendant acting in a supervisory capacity." Hayut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir. 2003). Instead, evidence of a supervisory official's "personal involvement" in the challenged conduct is required. Id.; Johnson

v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 254 (2d Cir. 2001). Personal involvement is not

limited to direct participation by the supervisor in an alleged violation; personal involvement

may also include an official's (1) failure to take corrective action after learning of a subordinate's

unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross

negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference

to the rights of others by failing to act on information regarding the unlawful conduct of

subordinates. Hayut 352 F.3d at 753.

Courts may impose supervisory liability where "an official has actual or constructive

notice of unconstitutional practices" by his or her subordinates "and demonstrates gross

negligence or deliberate indifference by failing to act." Meriwether v. Coughlin, 879 F.2d 1037,

1048 (2d Cir. 1989); Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1066 (2d Cir. 1989).

Plaintiff's Complaint alleges that at all times relevant to the claims of the instant case,

Defendants held supervisory authority over Barrett. (Compl. ¶¶ 44-49.) Plaintiff's Complaint also

alleges several facts that imply that Defendants knew or were aware of the substantial risk that

Barrett was a serious threat to the safety of the prisoners. Plaintiff filed an Inmate Request Form

intended for Defendant Lieutenant Berrios in order to request to speak with a prison official

regarding Barrett's conduct. (Id. ¶ 45.) Plaintiff also alleges that two other prisoners were

sexually propositioned by Barrett and that these prisoners complained of the misconduct. (Id. ¶¶

50-53.) Barrett received a reprimand for his inappropriate behavior, but he was still permitted to

see prisoners. (Id. ¶¶ 54, 16, 25, 36.) The Supreme Court has held that if an Eighth Amendment

plaintiff presents evidence showing that a substantial risk of inmate attacks was "expressly noted

by prison officials in the past, and the circumstances suggest that the defendant-official being

sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." <u>Farmer v. Brennan</u>, 511 U.S. 825, 842, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). The formal complaints filed by Plaintiff and other prisoners regarding Barrett, combined with the reprimand that was issued following the formal complaints, could rationally lead a trier of fact to conclude that Defendants had notice of the threat Barrett posed to prisoner-safety and failed to take appropriate action.

Furthermore, in order to demonstrate that Defendants were on notice of Barrett's constitutional violations, Plaintiff is not restricted to demonstrating formal, direct communications with Defendants. "If it were the law that a custodial agency could see or hear no evil prior to the arrival on its supervisor's desk of a formal, written complaint from the victim then no amount of improper conduct by lower level custodial officials . . . could ever support a constitutional claim." <u>Villante v. Dep't of Corr. of N.Y.</u>, 786 F.2d 516, 522 (2d Cir. 1986). Therefore, "[w]hile prison supervisory officials are not required to be omniscient, they do have a duty to make reasonable inquiries into the activities of their subordinates and the condition of the inmates held in their custody." <u>Id</u>. In order to avoid contact with Barrett, Plaintiff resorted to intentionally striking another inmate in the presence of corrections officers, hoping that he would be transferred to another facility as a consequence. (Compl. ¶ 29-30.) Doe also changed his GED class schedule to avoid Barrett. (<u>Id</u>. ¶ 31.) Finally, Plaintiff alleges what appears to be an ongoing and continuous cycle of physical and sexual abuse rather than a single isolated incident. (<u>Id</u>. ¶ 35.) Ultimately, the pervasiveness of the alleged abuse could also lead a reasonable trier of fact to conclude that Defendants either knew or were aware of the substantial risk of Barrett's ongoing

16

violations. Therefore, this Court finds that Plaintiff has plead sufficient facts to create a material

issue of fact as to whether Defendants had the requisite level of personal involvement in the

alleged constitutional violations.

### 3.     Qualified Immunity

The Individual Defendants also argue that Plaintiff's Complaint should be dismissed

because they are shielded by the doctrine of qualified immunity. A government official sued in

his or her individual capacity is entitled to qualified immunity if the "plaintiff's right not to be

subjected to such conduct by the defendant was not clearly established at the time it occurred" or

if "the defendant's action was objectively legally reasonable in light of the legal rules that were

clearly established at the time it was taken." Rapkin v. Rocque, 228 F. Supp. 2d 142, 145-46 (D.

Conn. 2002) (citing Munafo v. Metro. Transp. Auth., 285 F.3d 201, 210 (2d Cir. 2002)); accord

Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001); Anderson v.

Creighton, 483 U.S. 635, 639-40, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). The standard for

establishing qualified immunity is particularly stringent on a Rule 12(b)(6) motion. McKenna v.

Wright, 386 F.3d 432, 436 (2d Cir. 2004). "Not only must the facts supporting the defense appear

on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted

only when it appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim that would entitled him to relief." Id. (internal citations and quotation marks omitted).

A right is "clearly established" if (1) the law is defined with reasonable clarity, (2) the

Supreme Court or the Second Circuit has recognized the right, and (3) "a reasonable defendant

[would] have understood from the existing law that [his] conduct was unlawful." Young v.

County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998). "The question is not what a lawyer would

17

learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." McCullough v. Wyandanch Union Free Sch., 187 F.3d 272, 278 (2d Cir. 1999).

It is well-settled that severe or repetitive sexual abuse of an inmate by a prison officer can be an "objectively, sufficiently serious" violation of the Eighth Amendment. Boddie v. Schneider, 105 F.3d 857, 861 (2d Cir. 1997). Moreover, the supervisors of prison officers "have a duty to make reasonable inquiries into the activities of their subordinates and the condition of the inmates held in their custody." Villante, 786 F.2d at 522. As mentioned previously, Plaintiff alleges sufficient facts such that this Court cannot conclude—as a matter of law—that Defendants did not deliberately or with gross negligence fail to address the violation of Plaintiff's constitutional rights at the hands of their subordinate. Because an issue of material fact remains, this Court concludes that Plaintiff's claims are not barred by qualified immunity.

### 4.    Supplemental Jurisdiction

Finally, Defendants urge that if Plaintiff's federal claims are dismissed before trial, this Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  All state law claims have been dismissed, and therefore, this argument is moot and need not be addressed.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [Doc. No. 26] is **granted in part** and **denied in part**. The University of Connecticut is dismissed as a defendant, rendering moot all claims against the University. Judgment shall enter in favor of the University of Connecticut Health Center. Moreover, Plaintiff's state law claim of negligent supervision against

all defendants was dismissed. In all other respects, Defendants' Motion to Dismiss is denied.

  SO ORDERED.

            Dated at New Haven, Connecticut, December  18 , 2006.

                    /s/
              Peter C. Dorsey, U.S. District Judge
                United States District Court